UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEHOE COMPONENT SALES
INC., d/b/a PACE ELECTRONIC
PRODUCTS, et al.,
    Plaintiffs,

v.

BEST LIGHTING PRODUCTS,
INC.,
    Defendant.

Case No. 2:10-CV-00789
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on the parties' post-trial motions. For the reasons that follow: Best Lighting's motion to amend the judgment is **DENIED**, doc. 157; Best Lighting's motion for an attorneys' fees is **GRANTED in PART and DENIED in PART**, doc. 159; and Pace's motion for clarification of the Court's injunction order is **DENIED**, doc. 164.

### I. BACKGROUND

On March 17, 2014, the Court issued an order and opinion resolving the merits of the parties' claims prosecuted at a two-week bench trial in January. *See* Doc. 148. That order provided an in-depth review of the facts and claims at issue prior to the resolution of the merits. *See id.* at 1–12; *see also Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 933 F. Supp. 2d 974, 982–89 (S.D. Ohio Mar. 20, 2013). Rather than restating the facts and conclusions therein found, the following summary provides context for the present set of post-trial motions.

Alvin Katz and F. Patrick Kehoe both founded and operated companies that focused on the production and sales of emergency- and exit-lighting products. Katz formed Best Lighting in the mid-1990s. Prior to his death in 2012, F. Patrick Kehoe served as the CEO of Pace Electronic Products (Pace Electronics), and as partial owner of several Pace-related affiliate

1

companies. These affiliate companies included Pace Products, Ltd. (Pace Products) and Pace Technology Co., Ltd. (Pace Technology). Testimony at trial established that each of the Pace entities continues to work closely together in the lighting industry.[1]

At some point in 2000, Best and Pace came to do business together, with the Pace companies manufacturing products for Best. Pace did so by making molds (called "tooling") to produce the products. Although Pace grew to become one of the biggest manufacturers for Best, Mr. Katz and Best also submitted orders to other suppliers from 2000 to 2006. A series of disputes first began with allegations of defective products. This disagreement then turned into which party owned the tooling. Subsequently, Best became concerned that Pace was selling products to Best's current customers. The parties later entered into an agreement (which they call "the Supply Agreement") that became effective on January 10, 2007. In general terms, the Supply Agreement set a minimum amount of products that Best agreed to purchase from Pace annually ($7,000,000 worth). The agreement also fixed prices for the relevant products and included a non-compete provision. The agreement limited Pace's ability to use the tooling owned by Best and provided an express warranty for the products.

The parties intended the Supply Agreement to clarify their relationship and prevent future disputes from occurring. It did not. Best claimed that some of the products it purchased under the Supply Agreement were defective. Pace disagreed and claimed that Best owed it several million dollars for already-made goods and the minimum-purchase requirement. Unable to solve their problems, the parties turned to the courts.

Pace initiated suit and Best counterclaimed. The matter eventually came before the Court for a bench trial. Pace prevailed on its breach-of-contract claim for the unpaid goods. Best

---

[1] Pace Electronics and Pace Technology were the original Plaintiffs in this lawsuit, and currently serve as both Plaintiffs and counterclaim Defendants. Pace Products is not officially a part of the proceedings. Because of the close relationship between the companies, the Court refers to all of them collectively as "Pace."

2

prevailed on its claim for breach of express warranty, breach of implied warranty of merchantability and of fitness, breach of contract, tortious interference with business relationships and expectations, misappropriation of trade secrets under Ohio law, reverse palming off under the Lanham Act, false advertising under the Lanham Act, and conversion under Ohio law. The result was a net damages award of $1,133,697.10 in Best's favor. The Court also ordered Pace Electronics and Pace Technology pay Best an additional $200,000.00 in punitive damages. The Court issued a permanent injunction as to Pace's continued manufacture and sale of products found to violate the Lanham Act: PAC201, PAC202, PAC203, PAC210, PAC218, PAC223, PAC226, PAC242, PAC243, PAC244, PAC245, PAC312, PAC313, PAC314, PAC315, PAC330, PAC338. *See* Doc. 150 (injunction order). Finally, the Court reserved judgment on the issue of attorneys' fees and directed the parties to file additional briefing on the matter.

## II. DISCUSSION

### A. Motion to Amend the Damages Award; Motion to Clarify the Injunction

Three motions remain pending, two of which can be resolved easily. In April 2014, Best moved to amend its damages award according to Rule 59(e), specifically requesting additional lost profits based on Pace's sales figures from 2014. Doc. 157. Three days before Best filed its motion to amend, Pace filed its notice of appeal of the Court's final judgment in this case. Doc. 154. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Taylor v. KeyCorp*, 680 F.3d 609, 616 (6th Cir. 2012) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). This means that, "[a]s a general rule, an effective notice of appeal divests the district court of jurisdiction over the

3

matter forming the basis for the appeal." *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987). In practice, "expansion of a district court's judgment"—which is what Best asks the Court to do—"[is] not permitted while an appeal is pending." *Id.* Best's motion is accordingly denied as moot without prejudice to refiling pending the outcome on appeal.

Pace also moves to clarify the Court's injunction order issued after the bench trial. Doc. 164. It maintains that it redesigned the ballasts at issue in this case and that it has done so in compliance with the injunction order. *See* Doc. 150 at 1–2 ("Pace is permanently enjoined from . . . [k]nowingly manufacturing, fabricating, or producing the following models as they currently exist: . . . PAC312, PAC313, PAC314, PAC315, PAC330, [and] PAC338 . . . ."). Pace submits exhibits and affidavits demonstrating its attempts to redesign these products, and asks the Court to "confirm that Pace's redesigned ballasts may be manufactured and sold without violating the Injunction Order." Doc. 164-1 ¶ 21.

A similar logic as to Best's motion to amend the judgment applies to this motion. Pace styles its motion as one to clarify the injunction. These motions typically come in the form of a request to clarify specific language in an injunction order. *See, e.g., Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 477-78 (M.D. Tenn. 1992); *U.S. S.E.C. v. Onyx Capital Advisors, LLC*, No. 10-11633, 2012 WL 1018913, at *1-2 (E.D. Mich. Mar. 26, 2012); *cf. Mayfield Eng'g, Inc. v. Ohio Tpk. Comm'n*, 173 F.3d 855 (6th Cir. 1999) (per curiam) (table) (appealing after denial of motion to clarify, "arguing that the district court failed to describe in reasonable detail the acts enjoined"). Pace, however, asks the Court to take another look at the substance of its order. The practical effect: in order to rule on the merits of Pace's motion, the Court would have to expand or modify its injunction order—an order that is currently on appeal before the Sixth Circuit. For these reasons, Pace's motion is denied. Should issues with the

4

injunction persist, the Court would have jurisdiction to enforce the order based on a motion from the party (Best, in this case) that would like the order enforced. *See Innovation Ventures, LLC v. N2G Distribg., Inc.*, 763 F.3d 524, 544-46 (6th Cir. 2014) (enforcing an injunction order through a motion for contempt); *see also Smith Corona Corp.*, 784 F. Supp. at 477-78 (noting that "determin[ing] whether [the] new products actually avoid infringement . . . is an issue for another lawsuit").

## B. Attorney's Fees

Attorney's fees post-judgment are a different matter. The timely filing of a notice of appeal does not divest a district court of jurisdiction over matters that are collateral to the main cause of action. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). The Supreme Court has held that attorneys' fees are always collateral to the main cause of action. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-03 (1988) (holding that attorneys' fees are collateral to the main cause of action even when the statute creating the cause of action makes the award of attorneys' fees mandatory); *see also Reed v. Country Miss, Inc.*, 57 F.3d 1070 (6th Cir. 1995) (table) (finding district court had jurisdiction over attorneys' fees after notice of appeal where statute made attorneys' fees to prevailing party mandatory).

Pursuant to this Court's March 17, 2014 Order, doc. 149, Best moved for attorney fees and costs under § 1117(a) of the Lanham Act and the Ohio Uniform Trade Secret Act ("OUTSA"), Ohio Rev. Code § 1333.63(C). Best seeks reimbursement of $865,909.50 in attorney fees, an upward adjustment to that figure in recognition of its exceptional work and below-market hourly rates, interest on its fees, and $23,983.64 in costs. Doc. 159. Pace filed a memorandum opposing the motion for attorneys' fees and expenses, arguing that: 1) fee shifting under the Lanham Act and OUTSA is inappropriate here; 2) Best tries to recover for too many

5

hours; 3) an upward adjustment is not warranted; 4) Best is not entitled to pre-judgment interest; and 5) insufficient evidence supports Best's motion for expenses. Doc. 165. Best filed a reply. Doc. 171. The Court addresses these issues in turn.

### 1. Whether Fees are Appropriate after the Lanham Act and OUTSA Victories

Best argues that fee shifting is appropriate since it prevailed on its misappropriation of trade secrets claim under OUTSA and its Lanham Act claims for reverse palming off and false advertising. Doc. 149. Both 15 U.S.C. § 1117(a) and Ohio Rev. Code § 1333.64(C) allow the Court to award attorneys' fees to a prevailing party in certain circumstances. Under OUTSA, the Court may award attorneys' fees upon a finding of "willful and malicious misappropriation." Ohio Rev. Code § 1333.64(C). Similarly, the Lanham Act allows the Court to award attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). Case law has interpreted "exceptional cases" to involve infringement that is "malicious, fraudulent, willful, or deliberate." *Johnson v. Jones*, 149 F.3d 494, 503 (6th Cir. 1998). In this case, the Court has already imposed punitive damages, based upon the egregiousness of the conduct.

The Court holds that fee shifting is appropriate. The Court previously found "by clear and convincing evidence[] . . . that Pace (or its employees) acted with actual malice," and that "Mr. Kehoe and Pace are guilty of willful and malicious conduct under Ohio law." Doc. 148 at 86-87 (internal citation omitted). The findings supporting this conclusion provide clear and convincing evidence that Pace willfully and maliciously misappropriated Best's manufacturing know-how in violation of OUTSA. Mr. Kehoe and Pace knew that Mr. Katz vehemently opposed Pace selling competing products to Best customers, using trade-secret information learned from the parties' private relationship in doing so, and taking Best's products and selling them without Best's permission or with Pace's name attached to them. *Id.* at 86. Mr. Katz was

6

repeatedly told that Pace would not sell to Best's customers, but this proved to be false. *Id.* And, Mr. Kehoe and Pace knew that fielding competitive—and the exact same—products had a great probability of harming Best financially. *Id.*

This clear and convincing evidence leads to a similar conclusion that Pace willfully, maliciously, and deliberately violated the Lanham Act. Best's reverse palming off claim sought recovery from Pace for "taki[ing] [Best's] product and . . . represent[ing] it to be [its] own work." *Id.* at 63. Pace did so by selling Best products in Pace packaging that mirrored Best's packaging and by affixing Pace's product code to Best's products and placing them in Pace packaging. *Id.* at 62-63. Similarly, Best's false advertisement claim under the Lanham Act sought recovery for Pace's catalogs that included pictures of Best's products in an effort to sell products under the Pace name, which "constitute[d] a misleading representation through marketing as to the origin of a product." *Id.* at 68.

Such conduct regularly leads to the award of attorneys' fees. *See, e.g., Johnson*, 149 F.3d at 503 (affirming award of fees under Lanham Act where defendant wished to pass plaintiff's work off as his own); *Zarwasch-Weiss v. SKF Economos USA, Inc.*, No. 1:10-CV-1327, 2011 WL 4628745, at *7 (N.D. Ohio Oct. 3, 2011) (awarding fees under OUTSA for malicious and misappropriation of trade secrets).

Pace's arguments to the contrary do not convince the Court that fee shifting is inappropriate. Pace asserts that "Best was not the clear-cut prevailing party" under the Lanham Act because it succeeded on only two of its three claims. But a party does not need to win every claim to be considered a prevailing party. *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 425 (6th Cir. 2012); *Construcciones E Instalaciones Electromecanicas S.A. v. Hi-*

7

*Vac Corp.*, No. 1 2:07-CV-234, 2010 WL 3667018, at *1 (S.D. Ohio Sept. 14, 2010) ("A party can be a prevailing party even when only partially successful in litigation.").

Pace also stresses that attorneys' fees are inappropriate because the Court previously awarded Best $200,000 in punitive damages. Pace, however, offers no case law to support this position, and this Court has previously granted $997,960.50 in attorneys' fees in a case in which the plaintiff received $325,000 in punitive damages. *See Kendall Holdings, Ltd. v. Eden Cryogenics, LLC*, No. 2:08-cv-390 (S.D. Ohio 2014, Doc. 270 at 24-25, 41) (rejecting argument that jury award made the plaintiff whole and awarding attorneys' fees). At bottom, the Court finds that Pace acted willfully and maliciously, making fee shifting appropriate.

## 2. How Much To Award

The next issue is how to calculate a reasonable amount for the attorneys' fees in this case. The usual method in federal court is the "lodestar" approach. Under this approach, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[2]

Before undertaking the lodestar analysis, a review of the requests and supporting materials provides necessary background. Best requests attorney fees in the amount of $865,909.50; a 25% enhancement to its hourly rates to account for the results obtained and its below-market fees; interest that would increase its hourly rates another 5%; and costs and expenses in the amount of $23,983.64. The requested attorney-fee amount represents the combined billing of the law firm that worked on the case over the course of nearly 6 years. In support of the motion, Best submits detailed billing reports for every month it received a legal

---

[2] Ohio law also uses the same reasonable-attorney-fee analysis. *See Bittner v. Tri-Cnty. Toyota, Inc.*, 58 Ohio St. 3d 143, 145, 569 N.E.2d 464, 466 (Ohio 1991) (citing *Hensley*, 461 U.S. at 434).

8

bill during this case from its law firm, Wesp Barwell Carpenter LLC ("Wesp"). Best also submits a summary table showing that Wesp's attorneys billed a total of $952,434.85.

As noted, the overarching lodestar calculation depends on a reasonable number of hours, multiplied by a reasonable hourly rate. This lodestar calculation is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). In certain circumstances, the lodestar amount may be adjusted to reflect what a court, in its discretion, considers to be a reasonable attorney's fee. *Mann v. Acclaim Fin. Servs., Inc*, 348 F. Supp. 2d 923, 927 (S.D. Ohio 2004) (citing *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995) (court may reduce award to reflect limited success)). The Court turns now to its own lodestar calculation and, if necessary, applicable adjustments.

### a. Hours

Best submitted a summary account of the time worked in this case, documenting that Wesp worked 4516.22 hours. Best requests fees for 4,106.25 of these hours, maintaining that it adjusted its monthly invoices to: exclude or adjust the time spent on claims on which Best did not prevail; remove all charges specifically relating to Pace's claims for lost profits and unpaid invoices; marked fees that were already awarded on its motion to compel; and reduced hours because of duplicative effort by counsel. Doc. No. 159-1 ¶ 11 (Barwell Decl.). Using this as a baseline, the Court addresses the parties' arguments for and against reducing this amount further.

Pace argues that the hours should be reduced to reflect the fact that Best prevailed on only one of its OUTSA claims. Best does not necessarily disagree, as its own methodology accounted for a reduction on this count. *Id.* How much of a reduction presents a different problem. Case law provides some guidance. For example, where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole

9

times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. However, a court should not reduce attorney fees "based on a simple ratio of successful claims to claims raised." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996). Where a party's claims for relief involve a common core of facts or are based on related legal theories, the lawsuit "cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained." *Hensley*, 461 U.S. at 435.

With this precedent in mind, the Court considers several factors relevant in determining an appropriate number of hours.

First, based on its summary table, Best has already reduced its total hours by 409.97 hours, representing approximately a 9% reduction. This serves as a useful starting point for the Court in deciding whether to adjust the number of hours further.

The Court also notes the similarities and differences between Best's claims. After summary judgment, Best retained its breach of contract claim based on the Supply Agreement, a number of claims for breach of warranty, several claims under the Lanham Act, a claim for misappropriation of trade secrets, a claim for tortious interference with business relationships, and a claim for conversion. The basis of Best's claims stemmed from: Pace's manufacture of emergency and exit lights for Best lighting; Pace's misappropriation of Best's manufacturing know how; Pace's copying of Best's products and packaging the copied products in boxes mirroring Best's; and selling these items in the United States. Most of Best's claims revolved around these core issues. Indeed, as Best notes, only its claims breach of contract and breach of warranty can be separated from the common core of the case. *Cf.* Doc. 148 at 37-40 (tortious interference claims involved Pace copying Best products); *Id.* at 72-78 (conversion claim involves Pace possessing and using Best's tooling). Still, the Court notes that some time was

10

spent on issues such as contract performance. *See, e.g.*, Motions for Partial Summary Judgment; Docs. 54 & 66.

The Court also takes note of Best's level of success. Best originally asserted fifteen counterclaims, doc. 148 at 12, and ultimately prevailed on eight, doc. 149. It also achieved significant relief in that it received a net damages award of $1,133,697.10, an additional $200,000.00 in punitive damages, and a permanent injunction as to Pace's continued manufacture and sale of products found to violate the Lanham Act.

Consideration of these factors leads to the reasonable conclusion that 3,900.94 hours—an additional 5% reduction from the requested hours of each Wesp member—reflects a reasonable amount of time put into this case. The Court bases this decision on Plaintiff's ultimate successful vindication of eight of its claims, doc. 149; on the fact that the Best's additional, unsuccessful claims increased discovery and litigation time in a minor way; on the fact that, so far as the Court can tell, the additional claims did not affect the length of the trial; and on the fact that some of the claims were closely related, while others were not. In short, this additional 5% reduction in hours fairly reflects this case's history with respect to the OUTSA and Lanham Act claims upon which Plaintiff prevailed.

Pace argues for reductions on several other grounds. First, Pace asserts that because Best did not assert Lanham Act claims at the beginning of the case, the Court should exclude its hours worked before September 2010, when the Lanham Act claims were first alleged. But Pace has attested to removing hours for claims for which it cannot recover, *see* doc. 159-1 ¶ 11 (Barwell Decl.), and offered an expert's opinion to corroborate this claim, doc. 159-2 at 11 (Ferguson Decl.). Pace declines to point to any invoices that it believes should have been excluded but were not. And, as discussed above, the claims here were interrelated, involving a common core

11

of facts and related legal theories. The Court is unable to identify any legal work performed and billed by Wesp that was applicable to a theory distinct from the misappropriation claim under OUTSA (which Best asserted from the start) and the Lanham Act claims. *See Degussa Admixtures, Inc. v. Burnett*, No. 1:05-CV-705, 2007 WL 1041188, at *2 (W.D. Mich. Apr. 4, 2007) (rejecting "broad[] object[ion]" that defendants needed to distinguish hours spent on recoverable claim and non-recoverable claims where claim was based on a common core of facts and involved related legal theories).

Next, Pace argues that the hours need to be reduced because of repetitious trial preparation that resulted from Joel Wesp falling ill prior to trial. But attorney Gregory Barwell, a Wesp partner, did not charge for over 50 hours and an associate's hourly rate was reduced in December 2010 because of the duplicative work due to Joel Wesp's illness. Doc. 159-1 ¶ 11 (Barwell Decl.). Pace does not articulate why this does not suffice and does not point to any invoices that should be excluded. The Court finds no invoices that should be excluded on the basis that Best engaged in unnecessary duplicative work.

Last, Pace believes the hours should be reduced because it is difficult to "parse the attorney time entries because . . . each attorney's daily entries are 'block billed.'" But the use of block billing is not improper in the attorney fee context. *See Oakley v. City of Memphis*, No. 06-2276 A/P, 2012 WL 2682755, at *4 (W.D. Tenn. June 14, 2012). And, Pace does not highlight a single entry that reflects any alleged deficiency. More, the Court reviewed the invoices and is able to ascertain the compensable work within the block billing. *See United States ex. el. MacKay v. Touchstone Research Labs., Ltd.*, No. 1:04-cv-327.009 WL 3150385, at *4 (S.D. Ohio 2009) (rejecting defendants' block billing argument because the time entries sufficiently identified the subject matter of the work performed and the time expended).

Based on the above and the Court's review of the bills, the Court finds 3,900.94 hours—an additional 5% reduction from the requested hours of each Wesp member—reflects a reasonable amount of time put into this case.

### b. Rates

Wesp billed the following hourly rates: $255 per hour for partners; $175 per hour for associates; $125 per hour for paralegals and law clerks; and $40 per hour for support staff. Pace declines to contest these rates, and this Court has previously found the rates for Mr. Wesp and Mr. Barwell reasonable at $255 per hour. *See Kehoe Component Sales, Inc. v. Best Lighting Products, Inc.* 2012 WL 113429 (S.D. Ohio 2012). The Court is familiar with hourly rates charged by lawyers in Columbus, Ohio. The rates charged by the Wesp attorneys in this case are quite reasonable. The Court also notes that the quality of work performed was quite good. Parenthetically, the Court notes that all of the attorneys who tried this case on both sides were highly competent. The Court therefore accepts these rates.

By reducing each Wesp member's requested hours an additional 5% hours, the Court calculates the total number of hours requested by Best to be 3,900.94 hours. To calculate the total fee, the Court then multiplies these adjusted hours by Wesp's uncontested hourly rates.[3] This provides a fee of $822,613.59.

---

[3] To determine some hourly rates, the Court needed to divide the total money requested by the requested hours. *See* Docs. 159 at 7; 159-2 at 12.

| Attorney | Hours Requested | Adjusted Hours | Hourly Rate | Total |
|---|---|---|---|---|
| GPB | 1182.95 | 1123.80 | $255 | $286,569.00 |
| EJW | 803 | 762.85 | $255 | $194,526.75 |
| KLC | 298.6 | 283.67 | $255 | $72,335.85 |
| LPL | 262.15 | 249.04 | $255 | $63,505.20 |
| Paralegal | 498.75 | 473.81 | $125 | $59,226.25 |
| QMS | 269.9 | 256.41 | $175 | $44,871.75 |
| Reduced Partner Hours | 232.1 | 220.50 | $196.01 | $43,220.21 |
| QMS Trial Prep | 260.8 | 247.76 | $140 | $34,686.40 |
| Reduced Associate Hours | 169.1 | 160.65 | $112.5 | $18,073.13 |

13

### 3. Additional Requests

Best also seeks: (a) an upward adjustment to the lodestar calculation; (b) interest on its fees; and (c) litigation costs and expenses in the amount of $23,983.64. Pace objects to each of these requests. The Court addresses each in turn.

#### a. Upward Adjustment

Best requests an upward adjustment to the lodestar method. There exists a "strong presumption that the lodestar figure is reasonable" and therefore fee enhancements are awarded only in "rare" and "exceptional" circumstances. *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). "The burden of proving that an enhancement is necessary must be borne by the fee applicant." *Id.* at 553. Wesp must "demonstrate[] that 1) the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and 2) the success was exceptional." *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 912 (S.D. Ohio 2001) (internal quotation marks omitted).

Though the Court lauds Wesp's representation in this case and the success it obtained for its client, Best has not rebutted the "strong presumption that the lodestar figure is reasonable." *See Perdue*, 559 U.S. at 552. More, any need to adjust the rate is offset by not further reducing the number of hours spent on Best's non-recoverable claims. *See Fair Hous. Advocates Assoc. Inc. v. Terrace Plaza Apartments*, No. 2:03-CV-563, 2007 WL 445477, at *7 (S.D. Ohio Feb. 6, 2007). The cases that Wesp offers where "exceptional results" led to an adjustment do not speak to the situation here and the Court finds them unpersuasive. *See, e.g.*, *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (awarding 150 percent multiplier for solo

| Law Clerk | 117.1 | 111.25 | $49.56 | $5,513.55 |
| Reduced EJW | .4 | .38 | $225 | $85.50 |
| $0.00 Rate | 11.4 | 10.83 | $0 | $0 |
| Jud Mauger Hours | 0 | 0 | $255 | $0 |

14

practitioner who achieved exceptional results by taking an unpopular case others turned down and bringing to light a previously unrecognized cause of action); *Moore v. Brunner*, No. 2:08-CV-224, 2010 WL 317017 (S.D. Ohio Jan. 25, 2010) (awarding enhancement in case where Court ordered the Ohio Secretary of State to place candidates of a political party on the general election ballot). Thus, the Court declines to award an upward adjustment.

### b. Interest

Best also asks the Court to add 5% interest to Wesp's hourly fees. Whether or not to award interest on attorneys' fees falls within the Court's discretion. *See Bank One, N.A. v. Echo Acceptance Corp.*, 595 F. Supp. 2d 798, 802 (S.D. Ohio 2009).

The Court finds an award of interest appropriate here. An award of attorneys' fees first requires a determination of a reasonable hourly rate. This determination assumes a standard manner of payment. As the invoices Wesp submitted demonstrate, a standard manner of payment in the legal field occurs on a monthly basis—an attorney performs legal work and keeps track of her hours; she submits a bill to the client at the end of the month; and, assuming all goes accordingly, the client pays that bill soon thereafter. Thus, a standard hourly rate relies on timely payment and does not factor in the possibility of payment years later. This case has been in litigation for almost six years. Awarding a flat hourly rate that fails to account for the delay in payment is contrary to the method by which normal hourly rates are calculated, and contrary to the way attorneys and their clients submit and collect bills. If years-long delays in payment were standard, a reasonable attorney would increase her hourly rate to account. Accordingly, given the near six years of litigation, the Court increases the hourly rates in this case by 5% to account for the delay in payment from start to finish in this case. *See Kendall Holdings, Ltd. v. Eden Cryogenics, LLC*, No. 2:08-cv-390 (S.D. Ohio 2014) (doc. 270 at 39) (awarding interest in case

15

involving misappropriation of trade secrets). This brings the reasonable hourly rates to: $131.25 for paralegals; $183.75 for associates; and $267.50 for partners.[4] Thus, the total fees awarded amounts to $851,102.85.[5]

### c. Litigation Expenses

Last, Best seeks reimbursement for its litigation-related expenses. It bases its request for these costs on the Lanham Act, 15 U.S.C. § 1117(a) and Federal Rule of Civil Procedure 54(d). Under either, the Court looks to 28 U.S.C. § 1920 to determine what costs may be reimbursed. *See Audi AG v. D'Amato*, No. 04-CV-70665, 2007 WL 313537, at *3 (E.D. Mich. Jan. 30, 2007) ("The items that may be reimbursed as costs under 15 U.S.C. § 1117(a) are not defined in that section. Courts have held though that costs are limited to those available under 28 U.S.C. § 1920."); *see also In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359 (6th Cir. 2007) ("The costs that courts may tax under Rule 54(d)(1) are confined to the costs itemized in 28 U.S.C. § 1920."). Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:

---

[4]

| Attorney | Hours Requested | Adjusted Hours | Hourly Rate with Interest | Total |
|---|---|---|---|---|
| GPB | 1182.95 | 1123.80 | $267.50 | $300,616.50 |
| EJW | 803 | 762.85 | $267.50 | $204,062.38 |
| KLC | 298.6 | 283.67 | $267.50 | $63,844.23 |
| LPL | 262.15 | 249.04 | $267.50 | $66,618.20 |
| Paralegal | 498.75 | 473.81 | $131.25 | $62,187.56 |
| QMS | 269.9 | 256.41 | $183.75 | $47,115.34 |
| Reduced Partner Hours | 232.1 | 220.50 | $205.81 | $45,381.11 |
| QMS Trial Prep | 260.8 | 247.76 | $147.00 | $36,420.72 |
| Reduced Associate Hours | 169.1 | 160.65 | $118.13 | $18,977.58 |
| Law Clerk | 117.1 | 111.25 | $52.04 | $5789.45 |
| Reduced EJW | .4 | .38 | $236.25 | $89.78 |
| $0.00 Rate | 11.4 | 10.83 | $0 | $0 |
| Jud Mauger Hours | 0 | 0 | $267.50 | $0 |

[5] If Wesp's invoices have already been timely paid, Best should receive this amount.

16

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

Whether to award costs lies within the discretion of the Court. *See People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 371 (4th Cir. 2001); *see also Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046-CIV, 2010 WL 750301, at *5 (S.D. Fla. Mar. 3, 2010). "In reviewing a request for taxation of costs, a court must look 'first to whether the expenses are allowable cost items and then to whether the amounts are reasonable and necessary.'" *Whirlpool Corp. v. LG Electronics, Inc.*, No. 104-CV-100, 2007 WL 2462659, at *1 (W.D. Mich. Aug. 26, 2007) (quoting *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 591 (6th Cir. 2004)). The prevailing party bears the burden of establishing that the expenses it seeks to have taxed are authorized by applicable law, including proof of necessity and reasonableness. *Hall v. Ohio Educ. Ass'n*, 984 F. Supp. 1144, 1146 (S.D. Ohio 1997).

To support its claim for reimbursement, Best submitted a one-page summary of its costs. But, as Pace correctly notes, this summary provides insufficient detail. Though several of the listed expenses appear to allow recovery, the Court will not guess as to what costs are

recoverable and what costs are not. *See, e.g.*, *Audi AG*, 2007 WL 313537, at *3 (rejecting claim for costs where plaintiffs listed costs for depositions together because "the Court cannot separate th[e recoverable] amount from the costs that are not allowed"); *Cooley v. Lincoln Elec. Co.*, 776 F. Supp. 2d 511, 577 (N.D. Ohio 2011) (rejecting reimbursement of costs where there was no invoice for, or explanation of, the requested expenses). Therefore, the Court **DIRECTS** Best to submit a separate motion for costs within 14 days of this opinion and order explaining the basis for reimbursement for each expense. Best's explanation may not exceed one paragraph per expense claimed. Upon filing, Pace will have 14 days to address Best's motion, and must confine its response to only information presented in that motion. Pace's response is limited to one paragraph per expense claimed.

### III. CONCLUSION

Best Lighting's motion to amend the judgment is **DENIED**, doc. 157; Best Lighting's motion for an attorneys' fees is **GRANTED in PART and DENIED in PART**, doc. 159; and Pace's motion for clarification of the Court's injunction order is **DENIED**, doc. 164.

**IT IS SO ORDERED.**

10 - 8 - 2014
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**